# EXHIBIT 1.

```
 1        collect a salary, bring value to a company,
 2        make a company better.
 3   BY MR. CELLER:
 4        Q    How about, for example, when
 5   Mrs. Greenfield would e-mail you after her demotion
 6   that you rarely, if ever, responded?
 7             MS. LANGBEIN:  Objection to form.
 8             THE WITNESS:  Once she made a complaint
 9        against me personally, I asked Rose to be the
10        middle person.
11   BY MR. CELLER:
12        Q    Even though you could not respond to her
13   e-mails and copied Rose on them, that would have
14   been impossible for you to do?
15        A    What do you mean?
16        Q    Mrs. Greenfield e-mailed you on numerous
17   occasions regarding work, to which you never
18   responded.
19        A    I could not respond to her directly.
20        Q    It's your understanding that once an
21   employee -- strike that.
22             Is it your understanding that once an
23   employee complains to you that you're discriminating
24   against, that you will not respond to them at all?
25             MS. LANGBEIN:  Objection to form.
```



Toll Free: 877.495.0777
Facsimile: 954.987.7780
Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

321

THE WITNESS: It's truly a new area for me. I have been in business for 20-plus years, nobody every complained about me before. And I felt it's best to disengage personally so there is no misunderstanding of what I mean, what I said.

BY MR. CELLER:

Q   Well, so let me ask you this question: We discussed that the job descriptions were inapplicable to Mrs. Greenfield, right?

A   Which job descriptions?

Q   The ones we marked previously?

A   The one I see today?

Q   Yes.

A   Yes.

Q   And you say you told her what to do, but you don't remember and there's no notes of that, correct?

A   That's correct.

Q   So if you don't remember what she's supposed to do, how is Mrs. Greenfield supposed to know what she's supposed to do and, let me add one piece to that, you won't even talk to her?

MS. LANGBEIN: Objection to form.

THE WITNESS: We talked about her demotion



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

BY MR. CEILER:

Q   Now, you saw during her employment in February sometime that she already had applied for jobs, right?

A   Yes.

Q   But you didn't fire her, why?

A   I should have. I told you this from the get-go.

Q   Did you say to her during her employment, I know you're applying for other jobs?

A   Just like I know she was on the Internet all day and I know she was doing all kinds of other things she shouldn't be doing. I knew she was looking for a job. I should have fired her. There's no two ways about it.

Q   Did you ever even bother to write her up or e-mail her saying you're looking for houses on the internet, you have nothing to do, you are looking for jobs, get out?

A   Listen, I managed hundreds and hundreds of people for almost 30 years. Nobody ever sued me for harassment. My practices of, as you refer, poor recordkeeping -- are you with me?

Q   I'm listening, yeah.

A   My practice of poor recordkeeping has been


ESQUIRE
an Alexander Gallo Company

Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

325

applied for the same hundreds of people. Always people knew where they were standing. Always people knew where they are. Not every time things work out. I never claimed that I was perfect. I don't think anybody around this table is perfect.

MR. CELLER: Leslie is perfect.

MS. LANGBEIN: Thank you, Richard.

THE WITNESS: But the bottom line is I made the mistake for not firing her, absolutely, there are no two ways about it.

BY MR. CELLER:

Q You were angry that you were paying her $120,000 and you were not getting results, right?

MS. LANGBEIN: Objection to form.

THE WITNESS: I wouldn't say angry. I was not happy.

BY MR. CELLER:

Q You were not happy about it.

A Then you decided to cut her pay and demote her, right?

MS. LANGBEIN: Objection to form.

BY MR. CELLER:

Q Is that correct?

A When you say "then you decided", I gave her first chance of five months to build a team



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

326

1  and -- listen, I would love, having a vice president
2  of sales who is good, it's like printing money.
3       Q    You never had one before so how do you
4  know that?
5       A    I had one before.
6       Q    Who?
7       A    Todd Schwartz.
8       Q    You said Todd Schwartz wasn't exclusively
9  vice president of sales?
10      A    Correct.  He was many other things.
11      Q    Here is my question, Mr. Neuman --
12      A    It's a license in printing money.  Why
13 would a company throw away a license to print money?
14      Q    My question to you, is you were frustrated
15 that you were paying her $120,000 and she wasn't
16 producing?
17      A    Yes.
18      Q    Then you decided you were going to pay her
19 $60,000 and put her in these different positions.
20 And you find out that she's not only not producing,
21 but she's look for another job; is that correct?
22           MS. LANGBEIN:  Objection to form.
23           THE WITNESS:  I found out I told you very
24      early on that she's on the Internet looking for
25      a home.  She was on the Internet buying gifts.



                                366

1        Q    Were there any other executive staff were
2    out making sales --
3        A    Absolutely.
4        Q    -- who did not report to Ellen?
5        A    Absolutely.
6        Q    Can you name some of them?
7        A    Sure.  Every person that worked material
8    of the company by location.  In Naples it was Pat.
9    In Palm Beach it was Shelton.  In Miami we -- Todd
10   left before she joined, so it wasn't Todd.  Todd was
11   the president also sold.  Everybody sell.
12       Q    So when Mr. Celler is asking you about
13   sales figures going up or down, would Ellen's
14   efforts make any difference if other people were
15   also selling?
16            MR. CELLER:  Object to form.
17            THE WITNESS:  When Ellen met with me
18       original and she asked for quarter of million
19       dollars, she made it very clearly that it's not
20       big money.  Her explanation was that quarter of
21       a million dollars is not a lot of money because
22       I am going to make -- what is a quart of a
23       million if the company grow by $5 million a
24       year.  When you use this logic, gee, I guess
25       you're right.  If it cost you quarter of a



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

```
 1         million dollars to grow five million, you're
 2         right, it's not a lot of money.  But it was
 3         basically all talk.  We didn't grow by five
 4         million, but we spent the big money.
 5   BY MS. LANGBEIN:
 6         Q    Ellen was -- like I said Ellen was not the
 7   only one out there managing sales?
 8         A    She was managing the team sales.  Everyone
 9   else was individual sales.
10         Q    Okay.  What did Mrs. Greenfield tell you
11   about the circumstances of how she came to leave
12   Integrated Security Systems?
13         A    She told me that she felt that they were
14   financially weak and she told me that she doesn't
15   think that they will make it.
16         Q    Did she ever tell you that she wanted to
17   be a stay-home mommy?
18              MR. CELLER:  Object to form.
19              THE WITNESS:  I don't recall that.
20   BY MS. LANGBEIN:
21         Q    And that was the reason she gave them for
22   leaving?
23              MR. CELLER:  Object to form.
24              THE WITNESS:  No.  I recall her telling me
25         that she feel that they were financially weak.
```



ESQUIRE
an Alexander Gallo company
Toll Free: 877.495.0777
Facsimile: 954.987.7780
Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

369

1  Q    Was FISI pretty much in the same area as
2  Integrated Security Systems?
3       MR. CELLER: Object to the form.
4       THE WITNESS: FISI is a very similar
5  company to ISS, yes.
6  BY MS. LANGBEIN:
7  Q    Is it your opinion that Ellen misassessed
8  the skill set of the individuals that she was hiring
9  as sales, as part of the sales team?
10      MR. CELLER: Object to the form.
11      THE WITNESS: Obviously, I think as a
12 sales manager as I shared with you, and I
13 always use those terms, sales manager have to
14 recruit, train, and motivate the team. Like a
15 coach. I don't think she did any of the
16 following. And I don't think when she was
17 demoted in according to the letter April 1st
18 there was any, any team member, one member that
19 was to be attribute to her hard work.
20 BY MS. LANGBEIN:
21 Q    Are you aware of an incident with Matt
22 Landon that occurred in December of '06 when he went
23 to Naples and was supposed to meet Ellen there?
24      MR. CELLER: Object to form.
25      THE WITNESS: I heard about it after. But



ESQUIRE

Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

370

1        I'm not aware of the detail.  But I heard there
2     was some sort of a problem, and he was very
3     angry.
4  BY MS. LANGBEIN:
5        Q    Did Mr. Blackwell bring that to your
6  attention?
7        A    Probably, yes.
8        Q    Did Mr. Hurley bring any other matters to
9  your attention regarding Mrs. Greenfield's
10 performance?
11       A    Mr. Hurley at one point when he felt that
12 I was not listening to his advice, he asked me not
13 to have anything do with her, just not to hear her
14 name and not to be involved with her.
15       Q    Was your impression that Mr. Hurley and
16 Mrs. Greenfield had a conflict of personality?
17            MR. CELLER:  Object to form.
18            THE WITNESS:  Understatement.
19 BY MS. LANGBEIN:
20       Q    Okay.  Did they also have a conflict of
21 interest?
22            MR. CELLER:  On object to form.
23            THE WITNESS:  What do you mean?
24 BY MS. LANGBEIN:
25       Q    -- the fact that he was selling and she



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

don't think that they ever went to group lunch or group dinner and I don't think they ever had competition between them. I don't think there was any feeling of a team.

BY MS. LANGBEIN:

Q Did Mrs. Greenfield report to you that she had taken people out to lunch and that she had indeed had contests so she can motivate her staff?

MR. CELLER: Form.

THE WITNESS: Not as far as I know.

BY MS. LANGBEIN:

Q As far as you knew, she had done none of that?

A That's correct.

Q Okay. What did Mrs. Greenfield do, if anything, to build a great sales team, and as she testified, catapult this company to the next level?

MR. CELLER: Object to form.

THE WITNESS: Again, a team is made out of members. In the five months she was at the helm, there was not even one member, one member. You cannot build any team without members.

BY MS. LANGBEIN:

Q Did Mrs. Greenfield ever give you an



ESQUIRE
an Alexander Gallo company
Toll Free: 877.495.0777
Facsimile: 954.987.7780
Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

377

1      THE WITNESS:  Yes.
2  BY MS. LANGBEIN:
3      Q    Did she come back to your company?
4      A    Yes.
5      Q    What happened with her when she came make
6  to the company, was she demoted?
7      A    No.
8      Q    Do you know if she was promoted?
9      A    I think they had the same job.
10     Q    Did Yvonne Rodriguez go out on pregnancy
11 leave while she was employed?
12     A    Yes.
13     Q    Did she come back?
14     A    Yes.
15     Q    And --
16     A    If you ask me I can give you 20 names of
17 people that left and came back.  You know, it's part
18 of life.
19     Q    Mr. Celler asked you a question whether
20 anyone else had commented on Ellen's competence or
21 not.  And did you ever remember receiving any
22 e-mails that addressed Mrs. Greenfield competence?
23         MR. CELLER:  Object to form.
24         THE WITNESS:  Pat was the writer of the
25     group.  Pat liked to write.  So Pat as I shared



ESQUIRE

Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

```
 1        with you, right away would blast e-mails all
 2        the time, you're wasting your money, you're
 3        throwing you're money.
 4   BY MS. LANGBEIN:
 5        Q    How about Mr. Blackwell.  Did you receive
 6   any e-mails or get copied on any e-mail from Mr.
 7   Blackwell relating to Mrs. Greenfield's failure to
 8   follow up on assignment?
 9             MR. GELLER:  Object to form.
10             THE WITNESS:  Off the top of my head, I
11        don't remember.  But I remember having a
12        conversation with Shelton and the same type of
13        conversation.
14   BY MS. LANGBEIN:
15        Q    Now, at the time that you made the
16   decision to -- at the time that you told
17   Mrs. Greenfield that you were not happy with her
18   performance; when did that meeting take place as
19   best as you can recall?
20        A    There were a few meetings.  I would come
21   down and say, Ellen, it's been three months and
22   that's what's going on, it's been four months and
23   that's what's going one, where are we going, we
24   cannot continue like this.  So it was not just one
25   meeting.  It was an on-going discussion.
```



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

```
 1        Q    The one you had -- did you have one with
 2   her in February '07?
 3             MR. CELLER:  Object to form.
 4             THE WITNESS:  I had one probably starting
 5        from December and going on January and
 6        February.
 7   BY MS. LANGBEIN:
 8        Q    Did you give her, for instance, a month in
 9   February to bring the sales up or she would be
10   demoted?
11        A    As I felt --
12             MR. CELLER:  Object.
13             THE WITNESS:  As I felt our meetings were
14        going nowhere, I said, if we don't do something
15        by the end of February, March, something will
16        have to happen.
17   BY MS. LANGBEIN:
18        Q    Do you know when Mrs. Greenfield began
19   looking for jobs on the Internet?
20             MR. CELLER:  Object to form.
21             THE WITNESS:  Do I know the exact date,
22        no.
23   BY MS. LANGBEIN:
24        Q    Was it around the time that you had the
25   meeting with her where you gave her the final
```



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

380

1  warning?
2     A    In that general time, yes.
3     Q    Was it your impression that
4  Mrs. Greenfield seemed to have a problem
5  communicating with other people, that she often
6  misunderstood what they were saying?
7          MR. CELLER: Object to form.
8          THE WITNESS: I did not view it as a
9      communication problem. I view it as, for
10     whatever reason, she would get on their bad
11     side and there was bad feeling. If its Teri
12     always complained. If it is Pat. As you said
13     earlier, maybe it's because they were selling
14     themself, maybe. But there's certain people
15     that everybody talked nice about them, and
16     there's certain people that for whatever reason
17     they don't have a lot of friends.
18 BY MS. LANGBEIN:
19    Q    Did you come to know of an experience
20 where Ellen had miscommunicated with both Shelton
21 Blackwell and with Matt Landman regarding a trip
22 that was supposed to be taken to Naples?
23         MR. CELLER: Object to form.
24         THE WITNESS: Yes. This was the incident
25     that I think Matt felt that he went for a whole



Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

```
 1    not to cut it much quicker.
 2  BY MS. LANGBEIN:
 3    Q   At the time you made the demotion, did you
 4  have an honestly held belief that she was not
 5  performing up to the standards that you had hired
 6  her to perform?
 7    A   As a sales manager, absolutely.
 8    Q   Was that honestly held belief based upon
 9  what you observed as far as the sales and also what
10  other people had told you?
11       MR. CELLER:  Object to form.
12       THE WITNESS:  If you look again at the
13    numbers that cannot be argued, and without Teri
14    selling, none of her team members sold; one
15    here, and one there.  But this is not the same
16    promise as when we started that, oh, if you pay
17    me a quarter of a million dollars, you will see
18    I will grow the business by $5 million.
19  BY MS. GREENFIELD:
20    Q   What I'm asking is when you looked at the
21  sales figures, did you honestly believe in your mind
22  that Ellen was not performing up to par?
23       MR. CELLER:  Object to form.
24       THE WITNESS:  I did not believe that.
25
```


ESQUIRE
an Alexander Gallo Company

Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com

BY MS. LANGBEIN:

Q    Was that belief also fueled by the fact that you were getting notes and comments from other members of the management team telling you you were not getting your money's worth?

MR. CELLER:  Object to form.

THE WITNESS:  Yes.

BY MS. LANGBEIN:

Q    When you received Plaintiff's No. 16, this e-mail?

A    Yes.

Q    In your mind did you believe that Ellen was building a case at that point?

MR. CELLER:  Object to form.

THE WITNESS:  I tend to trust people. And -- but when I see something black and white I disagree, I respond.  Sometime I can do it right away.  Sometimes I cannot and then I forget.  Obviously here, my recollection is totally different than hers.

BY MS. LANGBEIN:

Q    When you received this e-mail from her?

A    Yes.

Q    Did you believe at that point that something was going on behind the scenes that you --



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.495.0777
Facsimile: 954.987.7780

Suite 1300
515 East Las Olas Boulevard
Fort Lauderdale, FL 33301
www.esquiresolutions.com