UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO 08-22033-CIV-ALTONAGA/BROWN

ELLEN GREENFIELD,

    Plaintiff,

v.

KENT SECURITY SERVICES, INC.

    Defendant .
_____/

### DEFENDANT'S MOTION TO STRIKE INADMISSIBLE EVIDENCE IN PLAINTIFF'S SUPPORTING DECLARATIONS, and references to them in her RESPONSE AND SUPPORTING MATERIALS

Defendant, KENT SECURITY SERVICES, INC., through undersigned counsel, pursuant to Rules 12(f) and 56(e) and Local Rule 7.1(A), moves the Court to strike the entire declaration of Jill Shavelson and portions of the Declarations of Ellen Greenfield, Todd Schwartz and Patrick Hurley and all references to these matters in Plaintiff's Plaintiff's Response to Defendant's Motion for Summary Judgment and in her Statement of Opposing Facts and as grounds for the relief sought states:

Background to Motion

As background for this motion and to understand the arguments made in it, it is important to understand the roles held by the declarants with Defendant. Leyda Tollentino worked for KSS as a paralegal and reported to Orly Alexander. Her primary responsibility was to coordinate KSS's legal matters, including its litigation. [G. Neuman Depo, p. 100-101]. Plaintiff did not consider Ms. Tollentino to be a member of management. [See E. Greenfield Declaration ¶ 14]. Ms. Tollentino was not trained by Defendant to handle internal complaints of discrimination. [See Exhibit A, H. Hartley Depo, p 54: 15-16 ] and had no qualifications to do so. [Id., p. 81: 17-22]. Ms. Tollentino resigned from KSS in or around October, 2007. Ms. Tollentino's connection to this case is that she participated in an interview of Plaintiff with Compliance Officer Henry Hartley regarding her internal complaint of pregnancy discrimination. Ms. Tollentino prepared a report ***outlining Plaintiff's allegations*** for Ms. Alexander. Ms. Tollentino's deposition has not been taken nor did she provide Plaintiff with an affidavit or declaration to oppose summary judgment.

Henry Hartley was Defendant's Compliance Officer and was responsible for investigating discrimination complaints. [G. Neuman Depo, p. 298: 23-25; 229: 24-25]. Mary Blanco was Defendant's Human Resource Coordinator [Id., p. 299: 4-13] and Rose Cucurillo was Defendant's office payroll manager. [R. Cucurillo Depo, p. 12:8]. Jill Shavelson was hired by Plaintiff as a salesperson in or around September 19, 2006. Ms. Shavelson worked as a salesperson until 2/13/07 when she resigned. [See Tab 5, Appendix to Motion for Summary Judgment]. Todd Schwartz was the President of KSS

[G. Neuman Depo, p 166: 19-20 ] and separated from its employment in 2006. [Declaration of Todd Schwartz].

At the time of the events at issue in this case Patrick Hurley was President of Kent Security of Naples, Inc. ("KSN").   He was responsible for operating KSN and oversaw its Operations and Sales functions. Mr. Hurley was terminated by Gil Neuman in or around June, 2008.  Mr. Hurley claims that he also is a victim of gender discrimination.  [See EEOC charge included at Exhibit 1 in Appendix to Reply].

### Rule 56(e)'s Standard

An affidavit which fails to meet the standards of Rule 56(e) is subject to a motion to strike.  Gore v. GTE South, 917 F. Supp. 1564, 1571 (M.D. Ala. 1996), citing Southern Concrete Co. v. United States Steel Corp., 394 F. Supp. 362, 380 (N.D. Ga. 1975), aff'd., 535 F. 2d 313 (5th Cir. 1976).   See also Ellison v. Logan, 2009 U.S. Dist. LEXIS 40667 (M.D. Fla. 2009). Federal Rule of Civil Procedure 56(e) requires affidavits in opposition to summary judgment to "set forth such *facts* as would be admissible in evidence, and ... show affirmatively that the affiant is **_competent to testify_** to the matters stated therein." This standard allows "otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." Macuba v. Deboer, 193 F.3d 1316 (11th Cir.1999).  Affidavits which contain conjecture or speculation, hearsay "evidence", or statements made without adequate foundation are subject to being stricken under Rule 56(e). . Hill v. Oil Dri Corp., 198 Fed. Appx. 852, 855 (11th Cir. 2006); Evers v. General Motors Corp., 770 F. 2d 984, 986 (11th Cir. 1985).

<u>Plaintiff's Declaration</u>

Plaintiff submitted a 46 paragraph declaration in support of her Response to Defendant's Motion for Summary Judgment which is referred to repeatedly in her Statement of Opposing Facts and in her response. Her is rife with inadmissible hearsay, opinions and conclusions and allegations that lack an appropriate foundation. Defendant has collected the portions of Plaintiff's declaration into categories and then follows with legal argument as to why the portions must be stricken.

<u>Inadmissible Opinions And Conclusions</u>

¶4.   "Prior to working for Defendant, I had ***extensive*** sales experience...." ***"This is because in the sales industry, you can have good months and bad months and it is incredibly difficult to forecast or predict whether a month will be good or bad. This determination is essentially made by clients and their needs for a particular month.***"

¶10. ...."But, in response, he was ***always evasive***..."

¶11.   "Ultimately ***we arrived*** at the following commissions plan: "

¶12.   "The only sales goal that Mr. Neuman and I ever ***agreed upon***...." "However, when he emails me a finalized job offer, he made reference to "previously determined goals" which to my understanding, was a reference to the $5,000,000 annual goal referenced above–the only goal ***upon which he and I agreed***."

¶13.   .... "It was only after ***I began experiencing discrimination*** in November, 2006..."

¶14.   "As to Ms. Reale, I ***believed that while she had good people skills and evidenced the ability to generate business, her weakness, as Mr.Neuman noted was her inability to close sales***."   ... "While I believed that Mr. Cardiff was not a "keeper" at that time, ..." " Mr. Cardiff ***later turned out to be a competent salesperson***..."

¶15. ..... "Based on ***this agreement*** with Mr. Neuman...."

¶17.   .... " I discussed each of these decisions with Mr. Neuman and ***he was in agreement and supportive of same***." "At no time did Mr. Neuman ever ***criticize, object to or disagree with any of my proposals, goals, or assessments***."

¶19.  .... "prior to this retreat Mr. Neuman and I had been working very closely, he was **_responsive_** to my work related inquiries and emails and **_very complimentary_** of my performance and team building to date...

¶20.  ..."While Mr. Neuman had been **_incredibly jovial and communicative_** with me prior to announcing my pregnancy, his **_demeanor towards me immediately changed._** ......" Mr. Neuman became **_pale and slinked_** down in his chair..." " ... appeared to be **_disinterested_** during my presentation"..... "Mr. Neuman **_avoided me_**, **_would not speak to me...._**." **_"I didn't realize that this was the beginning of the end of my employment for Defendant_**."

¶21.  "When I returned to work following the weekend retreat and up until the time I was demoted, **_everything regarding my employment changed_**." ....."Mr. Neuman started making **_nasty comments_**...."

¶22.  "All these comments were **_hurtful_**..." " Mr. Neuman **_stopped speaking with me in the office, stopped responding to my work related emails and stop [sic] including me in management meetings/decisions to which I should have been included_**."    "... **_this refusal to speak with me after announcing my pregnancy delayed...._**"

¶23.  " Notwithstanding Mr. Neuman's **_comments and behavior_** toward me, my sales team continued to **_flourish_** ..."   **_"This amount was more than fifty (50) percent of my promised annual goal_**..."   " **_actual revenue realized from these contract sales during this six (6) month period was ....... still more than half of my agreed upon goal of $5,000,000 per year._**

¶24.  **_"Notwithstanding my efforts and the success of my team, Mr. Neuman continued to ignore me save to make nasty comments_**....." " **_delaying_** my payments and **_objecting_** to them..."  " **_Because the only thing that had changed during my employment was the fact that I had announced my pregnancy_**...."  **_The first complaint took place in early 2007, well prior to my demotion_**."   " **_the ongoing comments and poor treatment by Mr. Neuman_**..."  **_"Notwithstanding Mr. Hartley's inappropriate response..."_**

¶25.  ....."**_abruptly_** terminated the meeting."

¶28.  "Ms. Tollentino let me know that **_I was being set up to fail_**...."

¶29..  "By mid March, 2007, **_Mr. Neuman had all but stopped speaking to me or responding_** to work related inquiries whatsoever."   " Because I was **_on trend to hit my goal for the year...._**"

¶30    ...."Mr. Neuman, as was ***"par for the course" never responded*** to this email."

¶31.    "***As a result of all the .... discrimination I was experiencing culminating in what was now an unwarranted demotion***.."    "Dr Center began working with me on how to best emotionally and physically handle ***the inexplicable conduct I was experiencing in the workplace.***"

¶32.    ...."Mr. Neuman ***continued to ignore*** my work related emails and inquiries." "... When he ***refused to respond***..... ***he made himself unavailable***." ...***"I felt like I was being forced out or being set up to fail.***.."

¶35.    " Because Mr. Hartley ***had ignored*** my requests...."    " started keeping contemporaneous notes/records of the ***improper actions or events***" " nothing was done to remedy ***the improper activity*** at issue."

¶37.    ..." now required to ***police*** me..."    " Prior to my demotion, Ms. Cucurillo was ***below*** me in Defendant's chain of command/company hierarchy."

¶38.    ..." Mrs. Alexander approached me and ***very curtly***...."

¶39.    ..."***my working conditions continued to deteriorate***....."   "Because Mr. Neuman ***would not respond, let alone approve***...."

¶41.    " ... not the $75,000 salary upon ***which Mr. Neuman and I agreed***..." "I felt this action was ***retaliatory and unwarranted***."

¶43.    '' ... I was ***forced*** to take a public bus home..."  " By taking my car away, Mr. Neuman ***prevented*** me from performing this function of the job."

¶46.    " ***Up until now, while my work condition was deplorable***...."  "Working for Defendant had ***become torture***."    "***I felt all of this had occurred as a result of announcing my pregnancy and then complaining about discrimination.***"

¶48.    "As a result of the trauma, humiliation and physical and mental distress that I suffered while working for Defendant, ***I delivered my daughter six weeks early and my child suffered from gastrointestinal problems as a result***."

¶49(b).    ***"For Mr. Blackwell to suggest that this issue was the responsibility of my sales team is preposterous."***

¶49(c) .....***"For Mr. Blackwell to suggest that Defendant lost these accounts based on something I said or did is disingenuous and untrue."***

¶49(f)   ..." *I* also generated $585,239.04" in revenue

## Argument

Self serving and unsupported opinions are invasive of a court's consideration. Gamble v. Aramark Uniform Services, Inc., 132 Fed. Appx. 263 (11th Cir. 2005).  Opinions contained in affidavits or declarations are subject to being stricken. The same holds true for affidavits which contain statements of "ultimate facts" or conclusions.  Here the above cited provisions of Plaintiff's Declaration are opinions and conclusions of her own qualifications, worth and progress [i.e. "extensive experience in sales" in ¶4; "my sales team continued to flourish" in ¶23; "on trend to hit my goal for the year" in ¶ 29, "notwithstanding my efforts and the efforts of my team "in ¶ 24, " what was now an unwarranted demotion" in ¶ 31; and "I also generated $585,239.04" in revenue" in ¶ 49(f)]; that she was discriminated and retaliated against based on her pregnancy, see ¶¶ 13, 22, 24, 31, 35, 41 and 46; see King v. ADT Security Services, Inc. 2007 U.S. Dist. LEXIS 68628 (S.D. Ala. 2007)  and ultimate conclusions of fact and law [¶¶ 11, 12, 13, 15, 17, 22, 23, 24, 31, 35, 37 and 41] such as that her demotion was "inexplicable" see, ¶ 31; that certain actions were "improper" ¶ 35 or "inappropriate" ¶ 24; and that Mr. Neuman "agreed" that her sales quota was to be $5 million in sales annually and to her decisions ¶ 17 and that her work conditions were "deplorable" and like "torture" to justify her why she resigned. See, ¶ 46.

Plaintiff's opinions also include such vague [1], descriptive and dramatic statements of opinion such as:

---

[1] To be considered on summary judgment, Rule 56(e) requires statements to be specific.    See other arguments re vagueness, infra.

- Mr. Neuman "appeared disinterested during my presentation" ¶ 20;

- "I didn't realize that this was the beginning of the end of my employment for Defendant." see ¶20;

- "....everything regarding my work changed" ¶21;

- Her prior employer had been "incredibly accommodating" ¶ 22;

- She had a "clear entitlement" to payments ¶ 24 [2]

- Comments were "ongoing" ¶ 24;

- She was subject to "poor treatment" ¶ 24;

- Individuals were "evasive" ¶ 19; "complimentary" ¶ 19; "communicative" ¶ 20; "jovial" ¶10; reacted "abruptly"¶ 25; "nasty" ¶¶ 21 and 24; spoke to her "curtly" ¶¶ 20 and 38;

- "... the "continued" treatment to which I was being subjected. ¶ 28.

- Incidents were "par for the course" ¶ 30;

- Her working conditions were "deplorable" ¶ and her employment had become "torture" ¶ 46;

- employees were "below" her ¶ 37

- Individuals"avoided" her ¶ 20;  "refused" to make themselves available, ¶ 32 or were "unavailable", ¶ 39;  "ignored" her, ¶¶  32 and 35;  did not "respond" ¶¶ 29. 30, 39; "stopped speaking to her"  ¶¶ 22 and 29;

- She was "prevented" from performing her job ¶ 43.

Amazingly,  Plaintiff even renders a ***medical opinion*** that she gave birth prematurely and her newborn suffered gastrointestinal problems as a direct result of the stress she suffered working for Defendant.  ¶48.   Even treating physicians may not opine about the causation

---

[2] This also constitutes a legal conclusion.

of a condition, Principi v. Survivair, Inc. 231 F.R.D. 685 (M.D. Fla. 2005), much less an individual whose avowed expertise is "sales." [3]

Plaintiff makes the following statement of common knowledge in ¶4: "This is because in the sales industry, you can have good months and bad months and it is incredibly difficult to forecast or predict whether a month will be good or bad.  This determination is essentially made by clients and their needs for a particular month."[4]  Such statements are considered opinion evidence and subject to being stricken. King v. ADT Services, Inc. 2007 U.S. Dist. LEXIS 68628 (S.D. Ala 2007).   Finally, Plaintiff offers her opinion as to the credibility of another witness.  See ¶¶ 49(b) and 49(c) which is the most clear example of improper opinion.

Not only does Plaintiff offer her **_own_** opinions on ultimate facts and conclusions of law, she also deigns to offer **_the hearsay opinions of others_**.  In ¶ 25, Plaintiff includes the following hearsay statements of opinion by paralegal Leyda Tollentino that "she too observed that I was being treated differently." and in ¶ 28 that Plaintiff "was being set up to fail" and "they are up to something." [5]  See also ¶ 36, "Ms. Tollentino told me that she

---

[3]  Plaintiff clearly lacks competency to know whether her child's medical condition was the result of stress, or other factors and for this reason it is also inadmissible.

[4]  This same statement in contained in the Declaration of Todd Schwartz.  See ¶ 3.   This provision also must be stricken from Mr. Schwartz' declarationas it is inadmissible.

[5]   These are not admissions of a party-opponent under Rule 801(d)(2) because Plaintiff has not shown that Ms. Tollentino was authorized to make such statements about the subject matter, or that it was within the course and scope of her employment to investigate discrimination claims. In fact, Ms. Tollentino did not handle internal discrimination complaints and was not trained to do so. [See excerpts from H. Hartley Depo].   Rule 801(d)(2) states that the mere making of the statement is insufficient to establish the declarant's authority.  See further argument, *infra*.

learned during her meetings that "they" (meaning Mr. Neuman and Mrs. Alexander" are "trying to get rid of you." These statements not only rank hearsay [6], Arendale v. City of Memphis, 519 f. 3d 587 (6th Cir. 2008) but inadmissible opinion as well. Moreover, Plaintiff has not established a foundation for their admission. Creal v. Springhill Ford, 2007 U.S. Dist. LEXIS 77827 (N.D Ill. 2007). [7]

Likewise, ¶ 24 includes statements purportedly made by Henry Hartley, Defendant's compliance officer. The alleged statements by Mr. Hartley that this is "Gil's way" and "sometimes he says things he shouldn't say " and that Plaintiff was "overly emotional because [she] was pregnant" [8] would be merely expressions of personal opinion and do not constitute admissions of a party-opponent pursuant to Rule 801(d)(2). Rowell v. Bellsouth Corp., 433 F.3d 794 (11th Cir. 2005). The same applies to her attribution to Ms. Cucurillo in ¶ 42 of the response "you know." See also argument *infra* re: Rule 801(d)(2).

## Interpretation of a Foreign Language

¶ 38 contains Plaintiff's interpretation of a statement made in Hebrew. Plaintiff admits that all she knows in Hebrew are few "words, phrases and expressions." She admitted in her deposition that the only language she is fluent in is Spanish. Plaintiff's base

---

[6] Plaintiff is offering the statements for the truth of the matter asserted therein.See Macuba, *supra,* at p. 1325 ("the statements Leonard claims were made to him were being offered for their truth: that DeBoer and Youseff had a "hit list" of people in the land use departments, including Macuba, ***they*** wanted fired")[E.S.].

[7] Even according to Plaintiff's own recitation of Ms. Tollentino's purported statements, Ms. Tollentino's basis for making the statement is that "she has seen type of behavior before in other work environments. " Plaintiff has not established the factual basis Ms. Tollentino's opinion or her expertise in workplace dynamics .

[8] Mr. Hartley denied making any of these statements at his deposition. [H. Hartley Depo, pp. 122-123].

for the interpretation is a "cross-language dictionary on-line" (which is itself hearsay). Plaintiff is not competent to translate from Hebrew to English and has not produced evidence that her translation is accurate.  For this reason ¶38 must be stricken.  See United States v. Llinas,  603 F. 3d 506 (5th Cir. 1979); Eli Lilly & Co. v. Air Express Int'l USA, Inc., 602 F. Supp. 2.d 1260 (S.D. Fla. 2009).

Lack of Personal Knowledge

While Plaintiff makes her declaration upon "direct and personal" knowledge, it is clear she has no personal knowledge of the actions or inactions of others.  In ¶26, Plaintiff alleges "....Mr. Hartley ***never investigated*** my statements and when Mr. Neuman would make an additional comment or not respond to my work related inquiries, I complained to Mr. Hartley again, all ***without any response or action*** from Mr. Hartley."  [9]  Assuming Plaintiff asked Mr. Hartley to investigate, she has not provided facts to establish a foundation for knowledge that Mr. Hartley "never investigated" nor responded or acted to her request.

The same principle applies to Plaintiff's statements relating to Mr. Neuman's actions and inactions:

¶20 ("Mr. Neuman "avoided" me)

¶ 22 ("Mr. Neuman's refusal")

¶ 24 ("Mr. Neuman continued to ignore me" and "began delaying my payments")

¶ 29 ("Mr. Neuman .... stopped responding"

---

[9]  See similar statements in ¶ 27, " Mr. Hartley..... never did so", in ¶ 33 ("for which nothing was done") and in ¶ 35 ("Because Mr. Hartley had ignored..."), ¶ ("Mr. Hartley was not investigating")

¶ 32 ("Mr. Neuman continued to ignore my work" and " he refused to respond")

¶39 ("Mr. Neuman would not respond")

¶20 (" Mr. Neuman .... .slinked down in his chair") [10]

Plaintiff has not established how she knows that Mr. Neuman's actions were intentional and directly related to her claims of discrimination or retaliation as opposed to exigencies of Mr. Neuman's own business needs and activities or those of his personal life. For these reasons, these provisions must be stricken.

### Hearsay

Rule 801(d)(2) allows an out of court statement made by a party or its agent to be admitted into evidence provided a foundation is established. The party offering the statement must affirmatively show the declarant to whom the statement is attributed was authorized to make the statement concerning the subject matter, or that the statement is within the scope of the declarant's agency or relationship during the existence of the relationship. The statement ***alone*** will not be considered to establish authorization or scope of agency or relationship.

Plaintiff's declaration contains hearsay statements made by Mr. Neuman, Ms. Tollentino, Mr. Hartley, Office Manager Rose Cucurillo and Human Resources Coordinator Mary Blanco. The statements attributed to Mr. Hartley in ¶ 24 do not fall within the ambit

---

[10] Plaintiff's attempts to use this alleged "non-verbal conduct" as an admission against a party-opponent. She does not state how she knows that Mr. Neuman's purported change in seating position is directly related to her announcement. To the extent that Plaintiff alleges she was never "reprimanded, disciplined or counseled" these non-acts do not constitute admissions because she has not laid a proper foundation for their admissibility. Ms. Cucurillo testified that Defendant is "lax" in the area of documentation. [R. Cucurillo Depo, p. 33:18].

of Rule 801(d)(2) because Plaintiff is offering them to show that she suffered a hostile work environment based on her pregnancy. They cannot be for the truth of the matter asserted because Plaintiff has not established that Mr. Hartley participated in the challenged decision-making, see, e.g. Zaben v. Air Products & Chemicals, 129 F.3d 1453 (11th Cir. 1997) or that the alleged statements are within the scope of Mr. Hartley's agency. It is clear that statements such as these would be outside the course and scope of a compliance officer's responsibilities. See, e.g. Lloyd v. Tassell, 2009 U.S. App. LEXIS 1531 (11th Cir. 2009).

The same flaws are evident as to the statements attributed to Ms. Tollentino in ¶¶ 25 and 28 and to Mary Blanco in ¶ 44 ("Ms. Blanco told me that Mr. Neuman had refused to sign the complaining employee's paycheck because "he did not need a troublemaker working for the company".). In neither instance has Plaintiff shown that it was in the scope of declarant's responsibilities or authority to make such statements.[11]

Finally, much of Plaintiff's declaration contains hearsay and "double hearsay." For example, in ¶ 32 Plaintiff states, " And, when I asked my co-workers to assist on their projects, ***they told me*** that I was not allowed to help." This is classic hearsay that does not fall within any exception. The statements attributed to Mary Blanco in ¶¶39 and 44[12], to Mr. Hartley in ¶ 24 and to Rose Cucurillo in ¶ 37 ("she was now required to police me per

---

[11] Plaintiff admits that Mr. Hartley was the compliance officer. Ms. Blanco had no functions relating to complaints of discrimination and denied that this incident occurred.

[12] This statement contains triple hearsay because it contains statements allegedly made to Ms. Blanco by an unnamed employee "who had complained of harassment" and Ms. Blanco's alleged reiteration of Mr. Neuman's comment made to Ms. Blanco which is double hearsay.

Mr. Neuman") and ¶ 42 ("you know") suffer from the same evidentiary deficiency. [13] Statements attributable to "property managers" in ¶49(c) also are hearsay.

### Jill Shavelson's Declaration

There is no statement in Ms. Shavelson's declaration that it is made on personal knowledge. The declaration, therefore, does not satisfy Rule 56(e). Even assuming it were made upon personal knowledge, it contains inadmissible personal opinion, see, ¶ 3 "I have ***extensive*** sales experience"), (¶4 "In my opinion, Mrs. Greenfield was incredibly competent, organized, dedicated, successful and well liked...") and ¶ 5, ".... Mrs. Greenfield spend [sic] ***significant*** time training and meeting with her sales staff to better their performance ....").

Her declaration–especially since it is not made on personal knowledge–also lacks a factual foundation for many allegations, i.e. (¶ 5 ".... Mrs. Greenfield ***continued to generate substantial sales and revenue*** for Defendant..."), (¶6 "At no time ... did I ever perceive or observe that Mrs. Greenfield was not diligently and/or successfully performing ***her duties***") and (¶7 "I observed..... Mrs. Greenfield was successfully ***building a sales team for Defendant and generating revenues.... which, based upon my understanding, was more substantial than at any time prior to her employment***." [14]

Given these deficiencies, Ms. Shavelson's declaration should be fully stricken.

### Patrick Hurley's Declaration

---

[13] Ms. Blanco's deposition was taken on June 9 and she denied making any of the statements which Plaintiff has attributed to her.

[14] Ms. Shavelson's declaration does not state how she came by this knowledge which precedes her period of employment. Therefore, at most this is a statement of opinion.

The following portions of Mr. Hurley's declaration must be stricken because they constitute inadmissible expressions of opinion and legal conclusions:

- ¶ 5. ..... "During many of these conversations, ***it became clear to me*** that Gil Neuman ***discriminated against women and more importantly, pregnant women.***"

- ¶ 5(a) ..... " I voiced my objection to Gil Neuman that ***he was discriminating*** against Ms. Callahan and ***that his conduct was grossly improper.***"

- ¶ 5(b)...."Despite previously being pleasant and jovial during the meeting, Gil Neuman's ***face immediately changed*** and he became pale and ***visibly upset***. I specifically recall that for the remainder of the evening ***his behavior was different*** and he ***avoided*** interaction with Ms. Greenfield directly. "

- ¶5(c) ..."When ***I advised him that he could not treat an employee who complained about discrimination this way*****.....**"

- ¶ 5(d).... ***"I..... again explained that he cannot treat men and women differently..."***

- ¶6. "During my employment, I had the opportunity to observe Mrs. Greenfield's work. ***I found her competent and respected*** by both management and the sales team...." ... Other than during our initial work related disagreements within weeks of her commencing employment, ***I found her to be competent and respected*** by both management and the sales team.... "

- ¶8. ".... I was dismayed by this demotion ....." " When I learned that Mrs. Greenfield had been demoted to what essentially resulted to ***a menial position*** ,..... I felt embarrassed for her." "Plaintiff was now put in a ***demeaning*** role of working beneath employees of Defendant, such as Rose Cucurillo, that previously were below her in the chain of command for Defendant."

- ¶10. ...."I repeatedly complained to Gil Neuman about ***discriminatory and inappropriate business practices***...." "Notwithstanding these complaints, he did as he wished and the result was that ***I personally observed him engaged in discriminatory practices.***"

- ¶ 11 ..."terminated from my position by Gil Neuman for what he ***falsely*** claimed...."

Rather than repeat the same arguments previously made, Defendant simply directs the Court's attention to the cases cited above which hold that conclusory statements and statement of personal opinion are to be disregarded and stricken under Rule 56(e).

Many other statements in Mr. Hurley's declaration lack a factual foundation. In ¶ 5, Mr. Hurley's opinion apparently is based on ***two*** purported conversations.[15]  For Mr. Hurley's statements in  ¶ 5(b) to be admissible, there would need to be a foundation laid that he was in a physical position to see Mr. Neuman during dinner and that he was in Mr. Neuman's presence the entire evening, i.e., next to or directly in front of Mr. Neuman [16] And, while Mr. Hurley states in ¶ 6 that he worked with Plaintiff on a "daily" basis and  had the opportunity to observe Plaintiff,   this directly contradicts Plaintiff's testimony that she had little contact with Mr. Hurley.  [E. Greenfield Depo, p. 120: 16].   Mr. Hurley's declaration in ¶ 6 that Plaintiff was "respected by both management and the sales team" also lacks the ***specificity*** of fact to form a foundation for the statement.  There  also is no factual foundation in the declaration to establish that Mr. Neuman would have discussed Plaintiff's sales goals or performance deficiencies with Mr. Hurley.  See, ¶¶ 6 and 8.   In

---

[15]  Presumably Plaintiff offers Mr. Hurley's declaration to show Defendant's general animus towards  women.    However, courts have rejected such evidence.  See White v. Columbus Metro Housing Auth,   429 F. 3d 232 (6th Cir.2005) and  Becker v. ARCO Chem Co., 207 F. 3d 176 ( 3rd Cir. 2000)[ evidence of prior treatment of others is inadmissible character evidence under Rule 404].   Because these purported statements do not relate to Plaintiff nor does she affirm that she was aware of them, the statements are inadmissible

[16]  Mr. Hurley refers to "dinner" and then later in the same paragraph refers to "meeting."  It is not clear whether his statement relates to one or two different events.

fact, the converse is undisputed: Mr. Hurley complained about Plaintiff's performance with Mr. Neuman vociferously. [E. Greenfield Depo, pp. 77-80].

## Conclusion

Because of the standards mandated by Rule 56(e), the entirety of Ms. Shavelson's declaration and the cited portions of Plaintiff's declaration and Mr. Schwartz and Hurley's declarations cannot be considered by the Court in her response in opposition to entry of summary judgment.  To the extent that Plaintiff relies on her own declaration and inadmissible statements of others in her response, in her Statement of Opposing Facts and in other supporting materials, those references must be disregarded and the arguments based on them must be deemed to fail.

WHEREFORE, Defendant respectfully requests that the Court to grant the relief sought in this motion.

>
> Respectfully Submitted,
>
> LANGBEIN & LANGBEIN, P.A.
> Counsel for the Defendant
> 8181 NW 154th Street, Suite 105
> Miami Lakes, FL 33016
> Tel: (305) 556-3663
> Fax: (305) 556-3647
> Email: langbeinpa@bellsouth.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on June 12, 2009 through EM/ECF and that a copy of the foregoing will be served via notification through EM/ECF on all counsel or parties of record on the attached service list:

By: *Leslie W. Langbein,*
         Leslie W. Langbein, Esq.
         Fla. Bar No. 305391

<u>SERVICE LIST</u>
CASE NO 08-22033-CIV-ALTONAGA/BROWN

MORGAN & MORGAN, P.A.
6824 Griffin Road
Davie, FL   33314.
Tel: (954) 318-0268
Fax: (954) 333-3515
email: Richard@cellerlegal.com
Counsel for the Plaintiff