```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3                   Case 08-22033-CIV-Altonaga

 4
    ELLEN GREENFIELD,
 5
              Plaintiff,
 6
                                         MIAMI, FLORIDA
 7      vs.
                                         SEPTEMBER 1, 2009
 8  KENT SECURITY SERVICES, INC.,

 9              Defendant.
    _____
10
         TRANSCRIPT OF EXCERPT OF JURY TRIAL PROCEEDINGS
11            BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                  UNITED STATES DISTRICT JUDGE
12

13
    APPEARANCES:
14
    FOR THE PLAINTIFF:
15
                            RICHARD B. CELLER, ESQ.
16                          Morgan & Morgan
                            6824 Griffin Road
17                          Davie, FL 33314 - 954.318.0268
                            rceller@forthepeople.com
18                          knitmik@forthe people.com

19                          KEITH R. MITNIK, ESQ.
                            Morgan & Morgan
20                          20 N. Orange Avenue, 16th Floor
                            Orlando, FL 32801 - 407.420.1414
21                          kmitnik@forthepeople.com

22

23

24

25
```

1

2

FOR THE DEFENDANT:

3

                              LESLIE W. LANGBEIN, ESQ.

4

                              Langbein & Langbein
                              8181 NW 154th Street, Ste. 105

5

                              Miami Lakes, FL - 305.556.3663

6

                              STANLEY KISZKIEL, ESQ.
                              9000 Sheridan Street, Ste. 92

7

                              Pembroke Pines, FL 33024
                              954.862.2288

8

                              sklaw@bellsouth.net

9

REPORTED BY:

10

                              BARBARA MEDINA, RPR-CM

11

                              Official United States Court Reporter
                              Federal Courthouse Square, Ste. 404

12

                              301 North Miami Avenue
                              Miami, FL  33128-7792     305.523.5518

13

                                        (Fax) 305.523.5519
                            Email:  barbmedina@aol.com

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

Page

Reporter's Certificate ................................... 20


INDEX TO EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|----------|------|------|------|------|
| Description | Page | Line | Page | Line |


CITATION INDEX

Page


SIDEBAR CONFERENCE INDEX

Descriptions                                        Page

ADMINISTRATIVE CONVENTIONS:

When counsel does not identify themselves each time they address the Court during a telephone conference, the industry-standard speaker identification is indicated by chevrons, i.e., >>>:

4

```
 1              [The jury leaves the courtroom at 12:28 p.m.]

 2              MS. LANGBEIN:  Your Honor, I probably have about

 3   another half-hour to go and that's it.  I'm trying as best I

 4   can.  If the witness would make shorter answers, we'd get out

 5   of here quicker.

 6              THE COURT:  I'll hear any arguments at this time.  I

 7   won't hear them at 1:45 when the jury is coming back, or would

 8   you rather get back together at 1:30?

 9              MR. MITNIK:  Or would we rather what?  I'm sorry.

10              THE COURT:  Return at 1:30.  I don't want to keep the

11   jury waiting at 1:45 when I told them we would resume with

12   them.

13              There are certain matters you want to address with me.

14   I don't know if you would rather do them now or 15 minutes

15   before the jury comes back.

16              MR. CELLER:  Your Honor, If possible, we had to still

17   play those clips.  Can we address the one argument now and the

18   subsequent legal argument?  The clips, there's three of them.

19   They'll take three minutes.  We'll have them keyed up at 1:30.

20              THE COURT:  Whatever you prefer.

21              MR. MITNIK:  Your Honor, I would move --

22              THE COURT:  Everyone be seated.

23              MR. MITNIK:  I would move for a mistrial on cumulative

24   grounds and the cumulative effect of these matters, as well as

25   individually.
```

1          The first one is the Golden -- I'm bringing this up
2   because it was the most recent -- the Golden Rule violation in
3   which the jurors were told, speaking to the plaintiff, "You're
4   being asked to comply with something that everyone in this
5   courtroom has to comply with," talking about punching a time
6   clock and rules of where you go when you do those type of
7   limitations.
8          That is a big one to me and it's not some frivolous
9   thing.  It's a Golden Rule violation.  We all know you're not
10  supposed to do a Golden Rule.  The question is what's the
11  substantive harm of it, and I consider it to be profound, and
12  the reason I say that, Judge, is one of my concerns in the case
13  is talking about punching a time clock and those type of
14  things.  We have jurors that may very well be punching a time
15  clock.
16         It has been a concern of mine in the case that we be
17  sensitive, that I don't push buttons with the jurors of my
18  client being some kind of prima donna that can't handle "Now
19  you gotta do what I gotta do."
20         For counsel to have directly played that card to this
21  jury guarantees that comes into play.  She just started it and
22  it's exactly what the Golden Rule is supposed to stop, and it's
23  not one of those little darn closing arguments, you say "We all
24  know" kind of.  This went right at the heart of a sensitive
25  issue and I know of no way to clean that up.

1    It was compounded by I approached the bench.  I moved

2  for a mistrial.  Counsel said "Well, I'll apologize."  I said

3  "I don't want you to apologize.  I don't want to make it any

4  worse.  Leave it alone."

5    We went back and counsel immediately said "All the

6  Court personnel has to comply with the rules," now referring to

7  the authority figures, the Judge, the marshals, all the

8  authority figures in this courtroom.  "They've got to do it.

9  You don't," compounding it, making it worse, after I

10  specifically asked -- turned down the offer to say something

11  for that very reason.

12    Number two, we've got -- the problem with the

13  cumulative effect of these things, Judge, is we have a tentacle

14  of things that created an unfair situation.  I would sadly, but

15  sincerely, say to the Court the only answer is a mistrial.

16    In addition to that, we've got -- on the issue of the

17  employment records from the University of Miami.  Not

18  employment records, the school records from the University of

19  Miami --  those were important enough to counsel that that's

20  what they started their cross-examination about.

21    They were -- there was some argument that "You're

22  lying about," in a he-said-she-said case, "You're lying about

23  whether or not you finished your schooling at the other place."

24    Now, here's the problem with it:  There are certain

25  things in impeachment materials that can be sprung, but the

1    general rule in Federal Court is we have full disclosure of

2    things.  We list documents and it's not supposed to be trial by

3    ambush.  We have fundamental fairness rules of discovery.

4    Those rules have been violated here.  If they had been

5    followed, that would have been a complete different scenario.

6           The rule that was violated is that, A, it's clear that

7    these records they got from a subpoena, but they said it to the

8    witness, "We have the records."  They got them from a subpoena.

9    They couldn't have gotten them without a subpoena.  Rule 45

10   says if you're going to subpoena records, there are ways you do

11   it and it's part of those fundamental rules of disclosure to

12   the other side.  We now know you're going after those records.

13   We now have a right to have copies of those records.

14          They didn't do that.  We've searched the file.  They

15   did not notify us, as required under Rule 45, that they were

16   subpoenaing records.  Had they, we would have had copies of

17   records out of them.  To make further -- and then I'll talk in

18   a moment why that's substantive, why we would have done

19   something, why it's prejudicial.

20          In addition, it didn't just stop without us getting

21   the required Rule 45 notice because they're getting records.

22   They didn't list a records custodian from the University of

23   Miami which also would have alerted us if they would have

24   said "Records custodian."

25          Now, they're trying to bring a records custodian in.

1   They've got a records custodian, I think, maybe even sitting

2   out in the hall.  They're trying to bring one in to admit the

3   records that were not listed on any exhibit list.  They were

4   only for impeachment purposes.  They clearly intend to try to

5   put them, which that's a whole different argument, that they're

6   not admissible because they're impeachment documents.

7           They can't now bring them in, but they've got a

8   witness they intended to call.  They listed records custodian

9   after records custodian after records custodian in their

10  required disclosure.  Not a mention of Miami.  That one happens

11  to be missing even though that's the only records custodian

12  they're actually trying to call.

13          That would have been something else.  That would have

14  alerted us under the discovery rules so we could prepare for

15  it.  They didn't.  That came as total surprise.

16          Now, what is the prejudice to us?  Number one, had we

17  known that, we could have then gotten discovery to get to the

18  bottom of it.  You could talk to deans, talk to people.  "Why

19  are you taking graduate level courses and getting credit for

20  them?  You have to complete the requirements of the bachelor

21  level to be doing that."  We can't in the middle of the trial.

22          Number two, the simple answer, had we known about it,

23  don't say anything about it.  I don't want to turn it into a

24  trial within a trial about a degree.  Why?  Kent Security, we

25  got all their records.  They don't have any resumé from her, to

1   my knowledge.  This isn't a resumé issue.  We would have not

2   gone into it.  We wouldn't have to have a big debate about it.

3        If they would have followed the rules, we would have

4   been notified of it.  They didn't follow the rules.  We got no

5   notification they were going to get the records.  We got no

6   copies and they didn't list the records custodian they were

7   intending to call and they kept us completely in the dark and,

8   bam, they started first thing with our witness on it.  It's

9   highly prejudicial.

10       Couple that with now we've injected this issue of

11  "Some of y'all may be working on the clock.  It's good enough

12  for you.  It's not good enough for her."  Everyone knows the

13  Golden Rule.  There's no excuse for that.  It doesn't stop.

14       In addition to that, we have the way the case started

15  where we argued that they should not be able to get into these

16  other matters from other employers to the try and prove "You're

17  a bad employee, so you are here," and we argued that.

18       We were a bit taken aback by that because my

19  understanding was they were trying to put it in under, that

20  their focus of putting that in was under this after-acquired

21  evidence rule.  But we argued, Your Honor, when it was clear

22  that they convinced the Court that under the law it was okay to

23  say it's part of her background and it comes in.  Your Honor

24  sustained it.  They urged you to, too.  We start the trial.

25  It's all fair game.  They did a whole opening statement on it.

1  We do the research afterwards and the case law says "No, the

2  prejudicial does outweigh the probative," like we said.

3        Your Honor asked me "What do you want to do?"  I said

4  "Because we go first, we got to put our evidence on."  Once you

5  ruled, we, in fairness, we rely on the ruling and go forward

6  with it and now we're in a position of "Well, you've opened the

7  door to it, so I'm going to allow the impeachment."  You asked

8  whether I want to do a restart.  I said "Yes" and moved for a

9  mistrial and at the time, on that limited issue, Your Honor

10 said "No."

11       I don't mean to revisit it, but it's part of the

12 cumulative effect of what we have going on here.  We have the

13 Rule 45 problem with the Miami records and the Golden Rule

14 violation.

15       It doesn't stop there, Judge.  We also have another

16 one that is very significant, the husband's claim for

17 discrimination.  That's clearly not relevant to anything.

18       Number two, it's my understanding that's not even a

19 correct statement.  He didn't have an employment-related

20 discrimination case.  That's my understanding.  Is that

21 correct?  It had to do with something that had a sexual assault

22 in a van that happened to him in some lawsuit.  So now the jury

23 has been -- remember, the theme of their big deal this last

24 hour and a half, two hours has been "You had a lawyer.  You

25 know what you're doing here.  You're setting her up with all

 1  these records.  This is a big setup.  You're making these notes
 2  talking to your husband" and then they say "Your husband had a
 3  discrimination case himself."
 4         It's totally inappropriate to go into the husband's
 5  prior lawsuit, and now you put that together with, particularly
 6  on something -- they know what that's about.  That lawsuit has
 7  no similarity to this case.  In good faith to think that's
 8  relevant evidence here and to blurt that out in front of the
 9  jury, Your Honor struck the question and granted my objection.
10  The jury, it's impossible for them not the rest of this case
11  think, "Her husband had a lawsuit.  What's his lawsuit about?
12  Is he advising on how to bring the lawsuit?"
13         Now, we've got that bundle of problems here and I know
14  of no way other than a mistrial and come in clean where the
15  rules are complied with and fundamental fairness is there and
16  we have disclosure of the things that should have been
17  disclosed to us in advance of trial so we can protect our
18  client's rights and rely on disclosures that the rule requires.
19         THE COURT:  Thank you.
20         I'll hear from defense counsel.
21         MS. LANGBEIN:  I'm a little puzzled.  I'm going to
22  start with the last one and move forward.
23         Mr. Greenfield testified in his deposition -- and I
24  have it here --  it wasn't about his claim of discrimination.
25  I asked her whether he had been a vice-president at Potamkin

1    and whether when he was that he had investigated a claim of

2    pregnancy discrimination.  It had nothing to do with his own

3    charge.

4            The point that was trying to be made is that her

5    husband knew what needed to be done as far as filing an

6    internal claim and had he then told her, that's what I was

7    trying to get across to the jury.

8            So, that is based on a mistaken impression of what

9    they believe I offered.  What I offered really was his work

10   experience as a vice-president of Potamkin where he had handled

11   a pregnancy discrimination claim.  That's number one.

12           Going backwards, we had approached opposing counsel

13   during one of the lunch breaks and asked if it would be okay if

14   we combined our direct and our cross and we were told it was

15   fine.  First they objected to it and then Mr. Mitnik came back

16   and said he rethought it and he thought it was okay for us to

17   go into certain areas.

18           So, if there's questions that are being asked that are

19   a little bit beyond direct, it's because of the fact that we're

20   trying to combine to get this done.

21           Some of the questions relating to her work experience

22   do come in, obviously, because it's a question -- as the Court

23   knows, the burden of proof is they must show that she is

24   qualified.  Our Rule 50 motion will be based, in part, on that

25   issue.

1          Mrs. Greenfield also raised it herself in direct and
2    I'm certainly allowed to go into that in cross.  It's also for
3    the issue of her truthfulness.  Mrs. Greenfield testified about
4    certain things and I'm entitled to go in and test her
5    truthfulness on this, which I did through documents which show
6    that, indeed, she did not tell, she did not represent what the
7    truth was.

8          The Rule 45.  I did look at the docket report that
9    they pulled yesterday.  It was my recollection that I had filed
10   the Rule 45 within -- it's always my practice to file a Rule 45
11   and put it onto the docket so there's no question about the
12   notice.

13         I noticed also that in the docket they don't show the
14   Rule 45 that I served on Mrs. Center.  Nor does it show the
15   Rule 45 had that I served on Dr. Silvers.  I can't explain it,
16   Your Honor.  I only know my intent was to file that Rule 45.
17   If it's not showing on the docket, I have no explanation.
18   Either that I screwed up or somehow it didn't transmit to the
19   court.  I have no idea what happened there.

20         Nonetheless, that is classic impeachment evidence and
21   the reason that we asked the custodian of records to come was
22   not to offer the transcript as substantive evidence, but for
23   them to have the opportunity to see the official records with
24   the custodian there so that if they had any questions about the
25   veracity of that transcript, they could inquire of the records

1  custodian who was bringing Mrs. Greenfield's academic records

2  with her.

3       If that person is sitting out in the hallway, then

4  they certainly have the opportunity during this lunch break to

5  question that records custodian about the accuracy of what I

6  gave Mrs. Greenfield to look at.

7       As far as the remark that was made to the jury, Your

8  Honor, I did apologize to you.  I apologized to my opposing

9  counsel.  It slipped out.  I know better than that.  I

10 attempted to, in my own mind, correct the error when I came

11 back to the podium readdressing it to the issue of people who

12 were sitting in the courtroom, not to try and say that Your

13 Honor has to punch a time clock.  I don't think anyone would

14 believe that.  You work too hard.  But the fact of the matter

15 is the jury instructions even say when you walk into this

16 courtroom, you don't leave behind your common experience.

17 That's the reason we pick jurors.  We believe they are

18 representative of the common experiences that we will be

19 talking about in our case.

20      Whether I made that remark or not -- and, again, I

21 apologized to the Court -- it's not sufficiently prejudicial, I

22 don't think, to any particular juror because there are jurors

23 here who are managers and they don't punch a time clock, and

24 there are jurors here who maybe do.  But, certainly, anybody

25 who is an adult and worked knows there's rules and regulations

1    and they would have brought that in their mind anyway when they

2    go back into the jury room and weigh the evidence.

3         So, there is no cumulative effect.  There is no reason

4    to grant a mistrial.  They were offered yesterday to do a

5    curative instruction as to the one question.  I have not seen

6    it.  If they want to include that as far as including that in a

7    curative instruction to the jury, I'm happy to look at it and

8    to agree to it, if I can.

9         Your Honor, there has been no -- I kind of feel like

10   my reputation is at stake here because I feel like I'm being

11   maligned.  I always try to practice with the highest degree of

12   professionalism.  There are some things, however, in the heat

13   of cross examination, or whatever, that do come out, but,

14   again, it was not an intentional thing on my part at all.

15        MR. MITNIK:  There was one other in the cumulative I

16   left out.  If I may?

17        There's also the matter with Ms. Shavelson.  Your

18   Honor has clearly made, before this came up, clearly indicated

19   "Do not show anything that's an impeachment document that

20   wasn't a document that you listed as one of your disclosure

21   documents as you're required."

22        They took an impeachment, what they called an

23   impeachment document, which was an application of

24   Ms. Shavelson, and one of the big -- it's not on some little

25   side issue.  It's a big issue.  They spent a good deal of time

1  on it and we heard about it in their opening statement, how

2  "Your best friend, you're big buddy, you were doing all these

3  wonderful things for your buddy, Ms. Shavelson."

4       They know the rules.  You don't show it to the jury.

5  It's clearly on its face -- we're all very well-trained trial

6  lawyers.  That's rank hearsay.  What Shavelson said in her

7  application where it said -- I don't remember the words

8  exactly, calling Ellen a friend, Ellen Greenfield a friend, was

9  clearly hearsay.  There's no way that could have been used with

10 our client to cross examine her without violating the Hearsay

11 Rule.

12      To make it worse, it's a document -- I don't believe

13 they're planning to call this witness.  She was a lady

14 favorable to us and because of the sake of time to get done is

15 one we cut out.  So, not intending to call the person, know you

16 got a pure hearsay statement that isn't coming in and never

17 showed it to us.

18      This is a record of errors.  We don't have access to

19 it.  Never listed on their exhibits.  You couldn't use that

20 document, in fairness, to impeach this witness.  It isn't a

21 statement of hers.  It's a hearsay statement of a non-party.

22 Nonetheless, knowing the rules, I can't show it to the jury, I

23 approached.  I objected.  They said "It's for impeachment

24 purposes" and I'm expecting a question so I can protect myself

25 and my client's rights.  Instead, they flop it on the screen

 1   and show the jury and there it is, "My friend."  Now, I can't
 2   unring that.
 3        The reason I didn't do the curative, what's the
 4   curative?  "Forget that you heard from this witness" they're
 5   not going to hear from "that she wrote they were friends when
 6   you say they weren't."
 7        So I can't unring it.  That's an additional ground for
 8   mistrial, and, just briefly, Judge, they made a statement that
 9   you can bring in whether or not she's qualified.  The 11th
10   Circuit -- and we have the case here -- says at trial you don't
11   address with the jury whether or not the person was qualified.
12   That's a misstatement of what the law is here.  That's not
13   relevant to the proceedings at trial.
14        The other question, Judge, is their argument that
15   under the Golden Rule we ask them to bring their common sense
16   to the courtroom and their common experience to the courtroom,
17   so this is a "So what"?  You can make that argument on every
18   Golden Rule.  Let's do away with it.  That's not fair.  What is
19   important is to have said to the jury "Ms. Greenfield, they
20   were just asking you to comply with the rules everyone in this
21   courtroom has to comply with."
22        That is -- I can't undue that.  Nor can I undue the
23   damage that they did with the Miami stuff.  Nor can I undo
24   without now changing plans and bringing Ms. Shavelson in who we
25   decided not to.  They put hearsay in about their relationship

1  that they know they couldn't have gotten in and displayed it in

2  violation of the court rules.

3        The last point, Judge, this is what's troubling about

4  those Miami records.  It isn't just one little slip here.  They

5  clearly wanted to surprise us with those documents.  That can

6  be undisputed, and it just so happens with the thing they

7  thought was most important not to list it as an exhibit and do

8  it the way, we'd be on notice, but to hold it back as a

9  surprise document, start out with it, get a big bang for the

10 buck, and it just happens the Rule 45 disclosure isn't there on

11 that.

12        It just happens on that one when that document is not

13 on any exhibit list and it just happens the records custodian

14 they were intending to bring is not listed when they listed a

15 ton of other records custodians, leaving us totally in the

16 dark.  Any one of those would have alerted us so we could do

17 our jobs.  It's not there.

18        THE COURT:  Let me give you my decision on this motion

19 for a mistrial, and I am granting it.

20        Yesterday when the plaintiff was confronted with those

21 University of Miami records, from that point forward, she was

22 completely decimated on the witness stand.  She ceased to be

23 the witness I had heard and observed prior to that.  She did

24 not recover from that and that record was key.  It was key to

25 the defense and it was procured without notice to the plaintiff

1  and an opportunity to address it, and I am in agreement with

2  the plaintiff that trial is not the time for the plaintiff to

3  attempt to recover from that shock, to attempt to go to the

4  University of Miami and ascertain what the status of those

5  records are and the status of the plaintiff's own educational

6  background about which she testified to the jury.  She lost all

7  credibility in front of that jury because she lost credibility

8  before the Court and it was all as a result of surprise and the

9  failure to abide by rules that govern.

10         The plaintiff has been deprived of her entitlement to

11  a fair trial, so I am granting the motion for a mistrial.

12         MR. CELLER:  Your Honor --

13         THE COURT:  Yes.

14         MR. CELLER:  -- may I make a request?  Since there

15  will be no verdict by this jury, may we be permitted, if the

16  jury is inclined, to allow us to ask questions of them of their

17  observations since there is no verdict?

18         THE COURT:  Why don't you give me a proposal as to how

19  you would question them, in what setting and who would be

20  present, and I'll consider that when we return, and we can also

21  discuss the rescheduling of this case for the trial.

22         Have a good lunch.

23         [Luncheon recess at 1:57 p.m.]

24

25

1

2                        C E R T I F I C A T E

3          I hereby certify that the foregoing is an accurate

4   transcription of proceedings in the above entitled matter.

5

6    12/21/09                    _____
         DATE                    BARBARA MEDINA
7                                Official United States Court Reporter
                                 400 North Miami Avenue, Suite 12-2
8                                Miami, FL  33128 - 305.523.5518
                                          (Fax) 305.523.5519
9                                Email:  barbmedina@aol.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

aback 9:18
abide 19:9
able 9:15
above-entitled 20:4
academic 14:1
access 16:18
accuracy 14:5
accurate 20:3
addition 6:16 7:20 9:14
additional 17:7
address 3:18 4:13,17 17:11 19:1
ADMINISTRATIVE 3:16
admissible 8:6
admit 8:2
adult 14:25
advance 11:17
advising 11:12
after-acquired 9:20
agree 15:8
agreement 19:1
alerted 7:23 8:14 18:16
allow 10:7 19:16
allowed 13:2
ALTONAGA 1:11
ambush 7:3
answer 6:15 8:22
answers 4:4
anybody 14:24
anyway 15:1
apologize 6:2,3 14:8
apologized 14:8,21
APPEARANCES 1:13
application 15:23 16:7
approached 6:1 12:12 16:23
areas 12:17
argued 9:15,17,21
argument 4:17,18 6:21 8:5 17:14
    17:17
arguments 4:6 5:23
ascertain 19:4
asked 5:4 6:10 10:3,7 11:25 12:13
    12:18 13:21
asking 17:20
assault 10:21
attempt 19:3,3
attempted 14:10
authority 6:7,8
Avenue 1:20 2:12 20:7

**B**

B 1:15
bachelor 8:20
back 4:7,8,15 6:5 12:15 14:11 15:2
    18:8
background 9:23 19:6
backwards 12:12
bad 9:17
bam 9:8
bang 18:9
BARBARA 2:10 20:6
barbmedina@aol.com 2:13 20:9
based 12:8,24
believe 12:9 14:14,17 16:12
bench 6:1
best 4:3 16:2
better 14:9
beyond 12:19
big 5:8 9:2 10:23 11:1 15:24,25
    16:2 18:9
bit 9:18 12:19
blurt 11:8
bottom 8:18
break 14:4
breaks 12:13
briefly 17:8
bring 7:25 8:2,7 11:12 17:9,15
    18:14
bringing 5:1 14:1 17:24
brought 15:1
buck 18:10
buddy 16:2,3
bundle 11:13
burden 12:23
buttons 5:17

**C**

C 20:2,2
call 8:8,12 9:7 16:13,15
called 15:22
calling 16:8
can't 5:18 8:7,21 13:15 16:22 17:1
    17:7,22
card 5:20
case 1:3 5:12,16 6:22 9:14 10:1,20
    11:3,7,10 14:19 17:10 19:21
ceased 18:22
CECILIA 1:11
CELLER 1:15 4:16 19:12,14
Center 13:14
certain 4:13 6:24 12:17 13:4
certainly 13:2 14:4,24
Certificate 3:3
certify 20:3
changing 17:24
charge 12:3
chevrons 5:17
Circuit 17:10
CITATION 3:10
claim 10:16 11:24 12:1,6,11
classic 13:20
clean 5:25 11:14
clear 7:6 9:21
clearly 8:4 10:17 15:18,18 16:5,9
    18:5
client 5:18 16:10
can't 5:18 11:18 16:25
clips 4:17,18
clock 5:6,13,15 9:11 14:13,23
closing 5:23
combine 12:20
combined 12:14
come 11:14 12:22 13:21 15:13
comes 4:15 5:21 9:23
coming 4:7 16:16
common 14:16,18 17:15,16
complete 7:5 8:20
completely 9:7 18:22
complied 11:15
comply 5:4,5 6:6 17:20,21
compounded 6:1
compounding 6:9
concern 5:16
concerns 5:12
conference 3:14,18
confronted 18:20
consider 5:11 19:20
CONTENTS 3:1
CONVENTIONS 3:16
convinced 9:22
copies 7:13,16 9:6
correct 10:19,21 14:10
couldn't 7:9 16:19 18:1
counsel 3:17 5:20 6:2,5,19 11:20
    12:12 14:9
Couple 9:10
courses 8:19
court 1:1 2:11 3:18 4:6,10,20,22
    6:6,15 7:1 9:22 11:19 12:22
    13:19 14:21 18:2,18 19:8,13,18
    20:7
Courthouse 2:11
courtroom 4:1 5:5 6:8 14:12,16
    17:16,16,21
created 6:14
credibility 19:7,7
credit 8:19
cross 12:14 13:2 15:13 16:10
cross-examination 6:20
cumulative 4:23,24 6:13 10:12
    15:3,15
curative 15:5,7 17:3,4
custodian 7:22,24,25 8:1,8,9,9,11
    9:6 13:21,24 14:1,5 18:13
custodians 18:15
cut 16:15

**D**

damage 17:23
dark 9:7 18:16
darn 5:23
DATE 20:6
Davie 1:17

**deal** 10:23 15:25
deans 8:18
debate 9:2
decided 17:25
decimated 18:22
decision 18:18
Defendant 1:9 2:2
defense 11:20 18:25
degree 8:24 15:11
deposition 11:23
deprived 19:10
Description 3:8
Descriptions 3:15
didn't 7:14,20,22 8:15 9:4,6 10:19
    13:18 17:3
different 7:5 8:5
direct 12:14,19 13:1
directly 5:20
disclosed 11:17
disclosure 7:1,11 8:10 11:16
    15:20 18:10
disclosures 11:18
discovery 7:3 8:14,17
discrimination 10:17,20 11:3,24
    12:2,11
discuss 19:21
displayed 18:1
DISTRICT 1:1,1,11
DIVISION 1:2
docket 13:8,11,13,17
document 15:19,20,23 16:12,20
    18:9,12
documents 7:2 8:6 13:5 15:21
    18:5
doesn't 9:13 10:15
doing 8:21 10:25 16:2
donna 5:18
don't 4:10,14 5:17 6:3,3,9 8:23,23
    8:25 10:11 13:13 14:13,16,22,23
    16:4,7,12,18 17:10 19:18
door 10:7
Dr 13:15

**E**

E 20:2,2
educational 19:5
effect 4:24 6:13 10:12 15:3
Either 3:18
Ellen 1:4 16:8,8
Email 2:13 20:9
employee 9:17
employers 9:16
employment 6:17,18
employment-related 10:19
entitled 13:4
entitlement 19:10
error 14:10
errors 16:18
ESQ 1:15,19 2:3,6
evidence 3:7 9:21 10:4 11:8 13:20
    13:22 15:2
exactly 5:22 16:8
examination 15:13
examine 16:10
EXCERPT 1:10
excuse 9:13
exhibit 8:3 18:7,13
exhibits 3:5,6 16:19
expecting 16:24
experience 12:10,21 14:16 17:16
experiences 14:18
explain 13:15
explanation 13:17

**F**

F 20:2
face 16:5
fact 12:19 14:14
failure 19:9
fair 9:25 17:18 19:11
fairness 7:3 10:5 11:15 16:20
faith 11:7
far 12:5 14:7 15:6
favorable 16:14
Fax 2:13 20:8
Federal 2:11 7:1
feel 15:9,10

**figures** 6:7,8
file 7:14 13:10,16
filed 13:9
filing 12:5
fine 12:15
finished 6:23
first 5:1 9:8 10:4 12:15
FL 1:17,20 2:5,7,12 20:8
Floor 1:20
flop 16:25
FLORIDA 1:1,6
focus 9:20
follow 9:4
followed 7:5 9:3
foregoing 20:3
Forget 17:4
forward 10:5 11:22 18:21
friend 16:2,8,8 17:1
friends 17:5
frivolous 5:8
front 11:8 19:7
full 7:1
fundamental 7:3,11 11:15
further 7:17

**G**

game 9:25
general 7:1
getting 7:20,21 8:19
give 18:18 19:18
go 4:3 5:6 10:4,5 11:4 12:17 13:2,4
    15:2 19:3
going 7:10,12 9:5 10:7,12 11:21
    12:12 17:5
Golden 5:1,2,9,10,22 9:13 10:13
    17:15,18
good 9:11,12 11:7 15:25 19:22
gotta 5:19,19
gotten 7:9 8:17 18:1
govern 19:9
graduate 15:4
grant 15:4
granted 11:9
granting 18:19 19:11
Greenfield 1:4 11:23 13:1,3 14:6
    16:8 17:16
Greenfield's 14:1
Griffin 1:16
ground 17:7
grounds 4:24
guarantees 5:21

**H**

half 10:24
half-hour 4:3
hall 8:2
hallway 14:3
handle 5:18
handled 12:10
happened 10:22 13:19
happens 8:10 18:6,10,12,13
happy 15:7
hard 14:14
harm 5:11
hear 4:6,7 11:20 17:5
heard 16:1 17:4 18:23
hearsay 16:6,9,10,16,21 17:25
heart 5:24
here's 6:24
he-said-she-said 6:22
highest 15:11
highly 9:9
hold 18:8
Honor 4:2,16,21 9:21,23 10:3,9
    11:9 13:16 14:8,13 15:9,18
    19:12
HONORABLE 1:11
hour 10:24
hours 10:24
husband 11:2,2,11 12:5
husband's 10:16 11:4

**I**

idea 13:19
identification 3:7,19

identify 3:17
immediately 6:5
impeach 16:20
impeachment 6:25 8:4,6 10:7
    13:20 15:19,22,23 16:23
important 6:19 17:19 18:7
impossible 11:10
impression 12:8
inappropriate 11:4
inclined 19:16
include 15:6
including 15:6
INDEX 3:5,10,14
indicated 3:19 15:18
individually 4:25
industry-standard 3:19
injected 9:10
inquire 13:25
instruction 15:5,7
instructions 14:15
intend 8:4
intended 8:8
intending 9:7 16:15 18:14
intent 15:6
intentional 15:14
internal 12:6
investigated 12:1
isn't 9:1 16:16,20 18:4,10
issue 5:25 6:16 9:1,10 10:9 12:25
    13:3 14:11 15:25,25
it's 5:8,9,22,22 7:2,6,11,19 9:8,11
    9:12,23,25 10:11,18 11:4,10
    12:19,22 13:2,10,17 14:21 15:24
    15:25 16:5,12,21,23 18:17
I'll 4:6 6:2 7:17 11:20 19:20
I'm 4:3,9 5:1 10:7 11:21,21 13:2,4
    15:7,10 16:24
i.e 3:20

J

jobs 18:17
Judge 1:11 5:12 6:7,13 10:15 17:8
    17:14 18:3
juror 14:22
jurors 5:3,14,17 14:17,22,24
jury 1:10 4:1,7,11,15 5:21 10:22
    11:9,10 12:7 14:7,15 15:2,7 16:4
    16:22 17:1,11,19 19:6,7,15,16

K

keep 4:10
KEITH 1:19
Kent 1:8 8:24
kept 9:7
key 18:24,24
keyed 4:19
kind 5:18,24 15:9
KISZKIEL 2:6
    kmitnik@forthepeople.com 1:21
knew 12:5
knitmik@forthe 1:18
know 4:14 5:9,24,25 7:12 10:25
    11:6,13 13:16 14:9 16:4,15 18:1
knowing 16:22
knowledge 9:1
known 8:17,22
knows 9:12 12:23 14:25

L

lady 16:13
Lakes 2:10
Langbein 2:3,4,4 4:2 11:21
law 9:22 10:1 17:12
lawsuit 10:22 11:5,6,11,11,12
lawyer 10:24
lawyers 16:6
leave 6:4 14:16
leaves 4:1
leaving 18:15
left 15:16
legal 4:18
LESLIE 2:3
Let's 17:18
level 8:19,21
limitations 5:7
limited 10:9

Line 3:8,8
list 7:2,22 8:3 9:6 18:7,13
little 5:23 11:21 12:19 15:24 18:4
look 13:8 14:6 15:7
lost 19:6,7
lunch 12:13 14:4 19:22
Luncheon 19:23
lying 6:22,22

M

M 1:11
making 6:9 11:1
maligned 15:11
managers 14:23
Marked 3:6
marshals 6:7
materials 6:25
matter 14:14 15:17 20:4
matters 4:13,24 9:16
mean 10:11
MEDINA 2:10 20:6
mention 8:10
Miami 1:2,6 2:5,12,12 6:17,19 7:23
    8:10 10:13 17:23 18:4,21 19:4
    20:7,8
middle 8:21
mind 14:10 15:1
mine 5:16
minutes 4:14,19
missing 8:11
misstatement 17:12
mistaken 12:8
mistrial 4:23 6:2,15 10:9 11:14
    15:4 17:8 18:19 19:11
Mitnik 1:19 4:9,21,23 12:15 15:15
moment 7:18
Morgan 1:16,16,19,19
motion 12:24 18:18 19:11
move 4:21,23 11:22
moved 6:1 10:8

N

N 1:20
needed 12:5
never 16:16,19
non-party 16:21
North 2:12 20:7
notes 11:1
notice 7:21 13:12 18:8,25
noticed 13:13
notification 9:5
notified 9:4
notify 7:15
number 6:12 8:16,22 10:18 12:11
NW 2:4

O

objected 12:15 16:23
objection 11:9
observations 19:17
observed 18:23
obviously 12:22
offer 6:10 13:22
offered 12:9,9 15:4
official 2:11 13:23 20:7
okay 9:22 12:13,16
Once 10:4
opened 10:4
opening 9:25 16:1
opportunity 13:23 14:4 19:1
opposing 12:12 14:8
Orange 1:20
Orlando 1:20
outweigh 10:2

P

Page 3:2,8,8,11,15
part 7:11 9:23 10:11 12:24 15:14
particular 14:22
particularly 11:5
Pembroke 2:7
people 8:18 14:11
people.com 1:18
permitted 19:15
person 14:3 16:15 17:11

personnel 6:6
pick 14:17
Pines 2:7
place 6:23
plaintiff 1:5,14 5:3 18:20,25 19:2,2
    19:10
plaintiff's 19:5
planning 16:1
plans 17:24
play 4:17 5:21
played 5:20
podium 14:11
point 12:4 18:3,21
position 10:6
possible 4:16
Potamkin 11:25 12:10
practice 13:10 15:11
prefer 4:20
pregnancy 12:2,11
prejudice 8:16
prejudicial 7:19 9:9 10:2 14:21
prepare 8:14
present 19:20
prima 5:18
prior 11:5 18:23
probably 4:2
probative 10:2
problem 6:12,24 10:13
problems 11:13
proceedings 1:10 17:13 20:4
procured 18:25
professionalism 15:12
profound 5:11
proof 12:23
proposal 19:16
protect 11:17 16:24
prove 9:16
pulled 13:9
punch 14:13,23
punching 5:5,13,14
pure 16:16
purposes 8:4 16:24
push 5:17
put 8:5 9:19 10:4 11:5 13:11 17:25
putting 9:20
puzzled 11:21
p.m 4:1 19:23

Q

qualified 12:24 17:9,11
question 5:10 11:9 12:3 13:11
    14:5 15:5 16:24 17:14 19:19
questions 12:18,21 13:24 19:16
quicker 4:5

R

R 1:19 20:2
raised 13:1
rank 16:6
    rceller@forthepeople.com 1:17
readdressing 14:11
really 12:9
reason 5:12 6:11 13:21 14:17 15:3
    17:3
Received 3:6
recess 19:23
recollection 13:9
record 16:18 24:4
records 6:17,18,18 7:7,8,10,12,13
    7:16,17,21,22,24,25 8:1,3,8,9,9
    8:11,25 9:5,6 10:11,1 13:21
    13:23,25 14:1,5 18:4,13,15,21
    19:5
recover 18:24 19:3
referring 6:6
regulations 14:25
relating 12:21
relationship 17:25
relevant 10:17 11:8 17:13
rely 10:5 11:18
remark 14:7,20
remember 10:23 16:7
report 13:8
REPORTED 2:9
Reporter 2:11 20:7
Reporter's 3:3
represent 13:6

representative 14:18
reputation 15:10
request 19:14
required 7:15,21 8:10 15:21
requirements 8:20
requires 11:18
rescheduling 19:21
research 10:1
rest 11:10
restart 10:8
result 19:8
resume 4:11
resumé 8:25 9:1
rethought 12:16
return 4:10 19:20
revisit 10:11
RICHARD 1:15
right 5:24 7:13
rights 11:18 16:25
Road 1:16
room 15:2
RPR-CM 2:10
rule 5:2,9,10,22 7:1,6,9,15,21 9:13
    9:21 10:13,13 11:18 12:24 13:8
    13:10,10,14,15,16 16:11 17:15
    17:18 18:10
ruled 10:5
rules 5:6 6:6 7:3,4,11 8:14 9:3,4
    11:15 14:25 16:4,22 17:20 18:2
    19:9
ruling 10:5

S

sadly 6:14
sake 16:14
says 7:10 10:1 17:10
scenario 7:5
school 6:18
schooling 6:23
screen 16:25
screwed 13:18
searched 7:14
seated 4:22
Security 1:8 8:24
see 13:23
seen 15:5
sense 17:15
sensitive 5:17,24
SEPTEMBER 1:7
served 13:14,15
SERVICES 1:8
setting 10:25 19:19
setup 11:1
sexual 10:21
Shavelson 15:17,24 16:3,6 17:24
Sheridan 2:6
she's 17:8
shock 19:3
shorter 4:4
show 12:23 13:5,13,14 15:19 16:4
    16:22 17:1
showed 16:17
showing 13:17
side 7:12 15:25
SIDEBAR 3:14
significant 10:16
Silvers 13:15
similarity 11:7
simple 8:22
sincerely 6:15
sitting 8:1 14:3,12
situation 6:14
    sklaw@bellsouth.net 2:8
slip 18:4
slipped 14:9
sorry 4:9
SOUTHERN 1:1
speaker 3:19
speaking 5:3
specifically 6:10
spent 15:25
sprung 6:25
Square 2:11
stake 15:10
stand 18:22
STANLEY 2:6
start 9:24 11:22 18:9

started 5:21 6:20 9:8,14
statement 9:25 10:19 16:1,16,21
    16:21 17:8
States 1:1,11 2:11 20:7
status 19:4,5
Ste 2:4,6,11
stop 5:22 7:20 9:13 10:15
Street 2:4,6
struck 11:9
stuff 17:23
subpoena 7:7,8,9,10
subpoenaing 7:16
subsequent 4:18
substantive 5:11 7:18 13:22
sufficiently 14:21
Suite 20:7
supposed 5:10,22 7:2
surprise 8:15 18:5,9 19:8
sustained 9:24

                    T
T 20:2,2
TABLE 3:1
take 4:19
taken 9:18
talk 7:17 8:18,18
talking 5:5,13 11:2 14:19
telephone 3:18
tell 13:6
tentacle 6:13
test 13:4
testified 11:23 13:3 19:6
Thank 11:19
that's 4:3 6:19 7:18 8:5,11 10:17
    10:18,20 11:6,7 12:6,11 14:17
    15:19 16:6 17:7,12,12,18
theme 10:23
there's 4:18 9:13 12:18 13:11
    14:25 15:17 16:9
They'll 4:19
they're 7:21,25 8:2,5,6,12 16:13
    17:4
they've 6:8 8:1,7
thing 5:9 9:8 15:14 18:6
things 5:14 6:13,14,25 7:2 11:16
    13:4 15:12 16:3
think 8:1 11:7,11 14:13,22
thought 12:16 18:7
three 4:18,19
time 3:17 4:6 5:5,13,14 10:9 14:13
    14:23 15:25 16:14 19:2
told 4:11 5:3 12:6,14
ton 18:15
total 8:15
totally 11:4 18:15
transcript 1:10 13:22,25
transcription 20:4
transmit 13:18
trial 1:10 7:2 8:21,24,24 9:24 11:17
    16:5 17:10,13 19:2,11,21
troubling 18:3
truth 13:7
truthfulness 13:3,5
try 8:4 9:16 14:12 15:11
trying 4:3 7:25 8:2,12 9:19 12:4,7
    12:20
turn 8:23
turned 6:10
two 6:12 8:22 10:18,24
type 5:6,13

                    U
understanding 9:19 10:18,20
undisputed 18:6
undo 17:23
undue 17:22,22
unfair 6:14
United 1:1,11 2:11 20:7
University 6:17,18 7:22 18:21 19:4
unring 17:2,7
urged 9:24
use 16:19

                    V
van 10:22
veracity 13:25

verdict 19:15,17
vice-president 11:25 12:10
violated 7:4,6
violating 16:10
violation 5:2,9 10:14 18:2
vs 1:7

                    W
W 2:3
waiting 4:11
walk 14:15
want 4:10,13 6:3,3 8:23 10:3,8
    15:6
wanted 18:5
wasn't 11:24 15:20
way 5:25 9:14 11:14 16:9 18:8
ways 7:10
weigh 15:2
well-trained 16:5
went 5:24 6:5
weren't 17:6
we'd 4:4 18:8
We'll 4:19
we're 10:6 12:19 16:5
we've 6:12,16 7:14 9:10 11:13
what's 5:10 11:11 17:3 18:3
witness 4:4 7:8 8:8 9:8 16:13,20
    17:4 18:22,23
wonderful 16:3
won't 4:7
words 16:7
work 12:9,21 14:14
worked 14:25
working 9:11
worse 6:4,9 16:12
wouldn't 9:2
wrote 17:5

                    Y
yesterday 13:9 15:4 18:20
you're 5:3,9 6:21,22 7:10,12 9:16
    10:25,25 11:1 15:21 16:2
you've 10:6
y'all 9:11

                    0
08-22033-CIV-Altonaga 1:3

                    1
1 1:7
1:30 4:8,10,19
1:45 4:7,11
1:57 19:23
105 2:4
11th 17:9
12-2 20:7
12:28 4:1
15 4:14
154th 2:4
16th 1:20

                    2
20 1:20 3:3
2009 1:7

                    3
301 2:12
305.523.5518 2:12 20:8
305.523.5519 2:13 20:8
305.556.3663 2:5
32801 1:20
33024 2:7
33128 20:8
33128-7792 2:12
33314 1:17

                    4
400 20:7
404 2:11
407.420.1414 1:20
45 7:9,15,21 10:13 13:8,10,10,14
    13:15,16 18:10

                    5

50 12:24

                    6
6824 1:16

                    8
8181 2:4

                    9
9000 2:6
92 2:6
954.318.0268 1:17
954.862.2288 2:7